# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| HARRY WINSTON, INC. <br> 718 Fifth Avenue <br> New York, NY 10019, <br><br> Plaintiff, <br><br> v. <br><br> ADLER WINSTON DIAMOND CORPORATION <br> 13501 Icot Blvd. <br> Suite 110 <br> Clearwater, FL 33760 <br><br> and <br><br> ADLER WINSTON INC. <br> 13501 Icot Blvd. <br> Suite 110 <br> Clearwater, FL 33760 <br><br> and <br><br> BRADLEY H. HARRIS <br> 13501 Icot Blvd. <br> Suite 110 <br> Clearwater, FL 33760 <br><br> Defendants. | Case No. <br><br> Judge: |

## COMPLAINT FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, PASSING OFF AND CYBER SQUATTING

Plaintiff Harry Winston, Inc., by and through undersigned counsel, for its Complaint against Defendants Adler Winston Diamond Corporation and Bradley Harris (hereinafter collectively referred to as either "Adler Winston" or "Defendants"), state as follows:

4731544v1

1. This is an action for trademark infringement under the Lanham Act, 15 U.S.C. § 1114, unfair competition, passing off, and cyber squatting under the Anti-cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1)(A), arising from Defendants' unauthorized use of Plaintiff's world-famous trademarks Winston and Harry Winston, and Defendants' ongoing deceptive marketing scheme that plays off the well known and longstanding reputation of the Harry Winston name.

## Parties

2. Plaintiff Harry Winston, Inc. ("HWI") is a New York corporation with a principal place of business at 718 Fifth Avenue, New York, New York. For close to a century, HWI has been engaged in the business of design, manufacture, distribution and sale of fine jewelry of exceptional quality and workmanship.

3. Upon information and belief, Defendants Adler Winston, Inc. and Adler Winston Diamond Corporation are Florida Limited Liability Companies, which, according to their website, conduct business throughout the United States and internationally.

4. Upon information and belief, Defendant Bradley H. Harris founded, controls, operates and is the Registered Agent for both Adler Winston, Inc. and Adler Winston Diamond Corporation; Mr. Harris is the owner of the domain name www.adlerwinston.com, and has offered for sale and sold diamonds under the name "Adler Winston".

## Jurisdiction and Venue

5. This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a) and (b). Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b)(2).

4731544v1

**Facts**
**The Fame of Harry Winston and the WINSTON Trademarks**

6.  There are few names more famous and renowned in the world of fine jewelry than Harry Winston, and few trademarks more widely-recognized for jewelry than the Winston and Harry Winston trademarks. Founded by Harry Winston in 1932, Harry Winston, Inc. invented modern couture jewelry as it exists today. The Winston reputation was built on unparalleled quality and exquisite design that emphasized the beauty of the stones and fine craftsmanship. Ronald Winston, the late Harry Winston's son, represented his family's third generation in the jewelry business. In 2006, Harry Winston, Inc., was acquired by Aber Diamond Corporation, which has changed its name to Harry Winston Diamond Corporation, a publicly traded company.

7.  Over the years, Harry Winston became known as the "Jeweler to the Stars," and was renowned for doing business with royalty, famous families (such as the Rockefellers) and countless Hollywood stars. Although the prices of some original and one-of-a-kind Harry Winston jewelry creations often range in the millions of dollars, the Winston name has become well-known to the general public through its promotions at functions such as the annual Academy Awards of Motion Picture Arts and Sciences ("Oscars"), where for many years Harry Winston, Inc. has loaned millions of dollars worth of jewels to the celebrity attendees.

8.  As far back as 1953, Marilyn Monroe immortalized the Harry Winston trademark in the movie "Gentlemen Prefer Blondes" by singing the lyrics "Talk to me Harry Winston, Tell Me All About It," in the song "Diamonds Are A Girl's Best Friend."

9.  In addition to the design and manufacture of fine jewelry, Harry Winston was also well-known for acquiring important stones. Over the years, the House of Harry Winston has

3

held more of the world's most famous jewels than any entity other than the British Crown, including the 337-carat Catherine the Great sapphire and the 95-carat Star of the East diamond. In 1949, Harry Winston acquired the most famous gem in the world, the 46-carat Hope diamond. In 1958, he donated the Hope diamond to the Smithsonian Institution, where it remains today.

10. Harry Winston is also well known for impeccable diamond cutting and manufacturing. Winston's diamond empire began with his purchase of Arabella Huntington's famous jewelry collection. The pieces were old fashioned at the time Winston purchased them, and grew to fame by cutting the gems into fashionable styles. Since the first acquisition, Harry Winston perfected the craft by purchasing and cutting many more large diamonds.

11. Harry Winston's diamond cutting reputation grew as he developed the Harry Winston emerald cut diamond; a particular emerald cut diamond with exquisite shine.

12. Plaintiff is the owner of the trademarks "Winston" and "Harry Winston," all common law rights relating to the use of those marks, the United States Trademark Registrations thereof, and the goodwill symbolized by the trademarks and the registrations thereof for a variety of goods and services relating to jewelry and watches, including the following:

   a. WINSTON - Registration No. 848,629, Registered May 7, 1988, jewelry and polished diamonds;

   b. HARRY WINSTON - Registration No. 3,355,622, Registered December 18, 2007, jewelry and watches, namely, bracelets, earrings, rings, brooches, pendants, polished diamonds, precious and semiprecious gemstones, wrist-watches, pocket-watches, clocks, watch-bracelets, bracelets-fasteners, watch-cases and watch-movements;

   c. HARRY WINSTON - Registration No. 3,616,973 Registered May 5, 2009, retail store services specializing in the sale of diamonds and rough diamonds;

   d. HW HARRY WINSTON - Registration No. 1,747,040, Registered January 19, 1993, jewelry, [sic] namely, crowns, necklaces, sets of jewels, brooches, bracelets, rings, earrings, cufflinks; horological and chronometric instruments; namely, wrist-watches, pocket watches, table watches, clocks, alarm-clocks, watch bracelets, bracelet

4

fasteners, watch cases; jewel cases in precious metals, precious and semi-precious stones.

(All of the above, including the common law rights therein, are collectively referred to as the "Winston Marks.")  Attached hereto as Exhibit A are copies of the Certificate of Registration for the Winston Marks.

13. The registrations identified in paragraph 12 are valid and subsisting and record title is in Plaintiff; the Certificates of Registration are *prima facie* evidence of the validity of the registrations, the Plaintiff's ownership of the Winston Marks, and of the Plaintiff's exclusive right to use the Winston Marks in commerce in connection with the goods and services specified in the Certificates of Registration under the provisions of 15 U.S.C. § 1057(b) and constructive notice of the Plaintiff's claim of ownership under 15 U.S.C. § 1072. Registration Nos. 848,629; and 1,747,040 are incontestable, which provides conclusive evidence of the validity of the registrations, the Plaintiff's ownership of the Winston Marks, and of the Plaintiff's exclusive right to use the Winston Marks in commerce in connection with the goods and services specified in the Certificates of Registration under the provisions of 15 U.S.C. § 1115(b).

14. The Winston Marks have been extensively and continually used, promoted and advertised by Plaintiff within the United States and worldwide for more than seventy-five (75) years for fine jewelry and related products.

15. The Winston Marks on fine jewelry have acquired a worldwide recognition by virtue of Plaintiff's use and efforts to promote and expand the use of the Winston Marks, and through Plaintiff's vigilance in policing the use of the Winston Marks.

16. The Winston Marks have acquired an extraordinary degree of consumer recognition in the minds of the public, and are now famous and serve uniquely to identify products and services provided by Harry Winston.

17. The Winston Marks have been extensively and continually used, promoted and advertised by the Plaintiff within the United States and worldwide for many years prior to Defendant Harris's registration of adlerwinston.com. This includes use of the WINSTON mark for more than seventy-five (75) years on jewelry and polished diamonds and the use of the HARRY WINSTON mark on jewelry, diamonds, watches, and related products for over sixty-five (65) years. The Plaintiff is also the owner of the domain name "harrywinston.com," registered in 1997.

18. Because of the increasing use of the internet for sales and consumer marketing, harrywinston.com is an integral portion of the Plaintiff's marketing and advertising structure. Because of the exclusivity of Harry Winston products, customers seeking exquisite pieces use harrywinston.com for purchases when a Harry Winston store or store selling Harry Winston pieces is unavailable to them, or to search for "Winston" in connection with jewelry.

19. Moreover, the secondary market for "used" pieces of Winston jewelry is much larger than the market for new jewelry, given that Winston jewelry is very much in demand and more Winston jewelry has been produced in the past sixty-five (65) years than is produced new in any year.

**Defendants' Intent to Infringe Upon and Use of the Winston Marks**

20. Defendants Adler Winston Diamond Corporation, Adler Winston Inc., and Bradley Harris sell diamonds and diamond services. Defendant Harris incorporated Adler Winston Inc. in 1993 and Adler Winston Diamond Corporation in 2008. In late 2010, Defendant's website initially came to the attention of Plaintiff's counsel.

4731544v1

21. Defendants promote their business as selling and remanufacturing diamonds with "exceptional attention to detail." Defendants' business provides the same services provided by the Plaintiff. Copies of the AdlerWinston.com website are attached hereto as Exhibit B.

22. Defendants use the name Adler Winston and adlerwinston.com to sell and advertise for sale goods in interstate commerce.

23. The names "Adler Winston" and "adlerwinston.com" are confusingly similar to the Winston name and Winston Marks, specifically because defendants use those names to promote the same business that the Winston Marks promote.

24. Defendant Bradley Harris chose the name Adler Winston for both corporations because of the fame, prestige, and reputation for quality surrounding the Winston name.

25. A private investigator contacted Defendant Harris on March 10, 2011 and spoke with him. When asked how he chose the name Adler Winston for his corporations, Defendant Harris said Adler is a big jewelry company and Harry Winston is a big jewelry company, so he put the two names together to form "Adler Winston."

26. Defendants' use in commerce of the Winston Marks to attempt to associate the Defendants' business with Harry Winston is likely to cause confusion, to cause mistake or to deceive members of the public into believing that Plaintiff has sponsored or endorsed Defendants' use of the Winston Marks.

27. In addition to its misuse and infringement of the Winston marks, Defendants have also engaged in unfair competition in their marketing and promotion of diamond and diamond services by playing off of the fame of the Winston name, and have diluted the distinctiveness of the Winston Marks to identify fine jewelry.

28. Defendant Bradley Harris registered the domain name "adlerwinston.com" in 2004; sixteen years after the WINSTON mark (Registration no. 848,629) was registered. However, upon information and belief, Defendant did not actually promote its business on the internet until recently.

29. In March 2011, Plaintiff's attorneys wrote to Defendant Harris and objected to his use of Plaintiff's trademark and the confusion to customers caused by using the name Winston for his diamond sales business.  See Exhibit C, attached.  Plaintiff's attorneys sent a follow-up letter to Defendant Harris on March 31, 2011.  See Exhibit D attached.

30. Plaintiff's attorneys heard no response from Defendants, and Defendants continued to make use of the Winston Marks in advertising, marketing, promoting and sale of diamond products and services to the public.

## First Cause Of Action

## Federal Trademark Infringement

31. Plaintiff realleges and incorporates by reference herein the allegations contained in paragraphs 1 through 30 of the Complaint.

32. Defendants' aforementioned acts constitute trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114.

33. Plaintiff's federal registrations on the Principal Register for the marks WINSTON - Registration No. 848,629; and HW HARRY WINSTON – Registration No. 1,747,040; are incontestable, which provides conclusive evidence of the validity of the registrations, the Plaintiff's ownership of the Winston Marks, and of the Plaintiff's exclusive right to use the Winston Marks in commerce in connection with the goods and services specified in the Certificates of Registration under the provisions of 15 U.S.C. §1115(b)).

8

34. Defendants' wrongful use of the Winston Marks and passing off Adler Winston products as the same level of quality as Harry Winston diamonds is likely to cause confusion as to sponsorship or authorization by Plaintiff. Defendants' actions constitute trademark infringement in violation of section 32(a) of the Lanham Act, 15 U.S.C. § 1114.

35. As a proximate result of Defendants' actions, Plaintiff has suffered and will continue to suffer damage to its business, goodwill, reputation, profits and the strength of the Winston Marks. An award of monetary damages alone cannot fully compensate Plaintiff for its injuries and Plaintiff lacks an adequate remedy at law.

36. The foregoing acts of infringement have been and continue to be deliberate, willful and wanton, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

37. Plaintiff is entitled to a permanent injunction against Defendants, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages; treble damages; disgorgement of profits; and costs and attorneys' fees.

### Second Cause of Action

### Federal Unfair Competition, False Designation of Origin and Passing Off

38. Plaintiff realleges and incorporates by reference herein the allegations contained in paragraphs 1 through 37 of the Complaint.

39. Because Defendants chose the Winston surname to associate its products with the well-known longstanding association of Harry Winston with quality diamonds, consumers are falsely led to believe that Defendants' diamonds and diamond services are associated with, endorsed by or are sponsored, or otherwise approved by Plaintiff, in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

9

40. The foregoing acts and conduct by Defendants constitute false designation of origin, passing off and false advertising in connection with products and services distributed in interstate commerce, in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

41. Defendants' acts, as set forth above, have caused irreparable injury to Plaintiff's goodwill and reputation. The injury to Plaintiff is and continues to be ongoing and irreparable. An award of monetary damages alone cannot fully compensate Plaintiff for its injuries and Plaintiff lacks an adequate remedy at law.

42. Plaintiff is entitled to a permanent injunction against all Defendants, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages; treble damages; disgorgement of profits; and costs and attorneys' fees.

**Third Cause of Action**

**Cybersquatting**

43. Plaintiff realleges and incorporates by reference herein the allegations contained in paragraphs 1 through 42 of the Complaint.

44. Defendant Harris registered the domain name "adlerwinston.com" using the Winston Marks for the purpose of profiting from the association of the name Winston with quality diamonds in violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1)(A).

45. Defendants have registered and continue to have registered in their name the domain name www.adlerwinston.com which they are using for a commercial website devoted entirely to selling jewelry.

46. Plaintiff's Winston and Harry Winston trademarks are distinctive and were distinctive at the time of Defendant's registration of the domain name www.adlerwinston.com.

47. The domain name www.adlerwinston.com is confusingly similar to and/or conveys a false affiliation with Plaintiff's website www.harrywinston.com.

48. Defendants have a bad faith intent to profit from their use of the "Winston" mark in the registering and maintaining of the domain name www.adlerwinston.com.

49. Defendants' conduct, as described above, therefore constitutes cyberpiracy of Harry Winston's mark in violation of section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d). Such conduct entitles Harry Winston to statutory damages in the amount of up to $100,000 under 15 U.S.C. § 1117.

50. Pursuant to the provisions of 15 U.S.C. § 1125(d)(1)(C), Harry Winston is also entitled to the immediate forfeiture of the domain name www.adlerwinston.com, as well as the transfer of the domain name from Defendants to Harry Winston.

51. Defendants' acts, as set forth above, have caused irreparable injury to Plaintiff's goodwill and reputation. The injury to Plaintiff is and continues to be ongoing and irreparable. An award of monetary damages alone cannot fully compensate Plaintiff for its injuries and Plaintiff lacks an adequate remedy at law.

52. Plaintiff is entitled to a permanent injunction against all Defendants, as well as all other remedies available under the Lanham Act, including, but not limited to, disgorgement of profits; compensatory damages; treble damages; and costs and attorneys' fees.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

(1) that Defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with Defendants who receive actual notice of the court's order by personal service or otherwise, be permanently enjoined from:

    (a) continuing to use the name "Winston" in their business name and website;

(b)  using any of the Winston Marks for goods or services, or on the internet, or as domain names, email addresses, meta tags, invisible data, or otherwise engaging in acts or conduct that would cause confusion as to the source, sponsorship or affiliation of Defendants with Plaintiff.

(c)  engaging in any marketing, advertising, or promotional activities that suggest that Adler Winston is associated with Harry Winston in any way.

(2)  that Defendants, in accordance with 15 U.S.C. § 1116(a), be directed to file with this Court and serve upon Plaintiffs within thirty (30) days after service of the permanent injunction a report in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with the permanent injunction;

(3)  that Plaintiff recover their actual damages sustained as a result of Defendants' wrongful actions;

(4)  that Plaintiff recover Defendants' profits made as a result of Defendants' wrongful actions;

(5)  that Plaintiff recover three (3) times Defendants' profits made as a result of Defendants' wrongful actions or three (3) times Plaintiffs' damages, whichever is greater;

(6)  that Defendants turn over the adlerwinston.com domain to Plaintiff and agree to never register any other domain name that contains the name "Winston";

(7)  that Plaintiff be awarded statutory damages pursuant to 15 U.S.C. § 1117(d);

(8)  that this case be deemed an exceptional case under 15 U.S.C. §§ 1117(a) and (b) and that Defendants be deemed liable for and ordered to reimburse Plaintiffs for their reasonable attorneys' fees;

(9)  that Plaintiff be awarded exemplary damages for Defendants' willful and intentional acts;

(10)  that Plaintiff recover their costs of court; and

  (11)  that Plaintiff recover such further relief to which they may be entitled.


Dated: November 10, 2011        Respectfully submitted,


                 /s/ Joseph R. Dreitler
                 Joseph R. Dreitler  (0012441)
                 Trial Attorney

                 Mary R. True   (0046880)
                 BRICKER & ECKLER LLP
                 100 South Third Street
                 Columbus, OH  43215
                 (614) 227-2300 (telephone)
                 (614) 227-2390 (facsimile)
                 jdreitler@bricker.com
                 mtrue@bricker.com

                 *Attorneys for Plaintiff Harry Winston, Inc.*